## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL MEGUEL SHELTON** | **CIVIL ACTION** |
| **VERSUS** | **NO.  14-2358** |
| **MARLIN N. GUSMAN, ET AL** | **SECTION "B"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.   On November 18, 2014, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.   Background

#### A.    Original Complaint

The plaintiff, Michael M. Shelton ("Shelton"), is an inmate who is currently housed at Dixon Correctional Institute ("Dixon") in Jackson, Louisiana. R. Doc. 4, p. 2. Shelton filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against defendants, Orleans Parish Sheriff Marlin N. Gusman ("Gusman"), Chief Deputy Bordelon ("Bordelon"), Chief Deputy Weaver ("Weaver"), Major Winfield ("Winfield"), Deputy Price ("Price"), the

---

[1] 766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims.  The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] R. Doc. No. 8.  The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

unidentified Medical Director at Orleans Parish Prison ("OPP"), an unidentified Medical Practitioner at OPP, and a medical technician referred to by Shelton as "Tech Pitmann" at OPP ("Pitmann") (collectively, Defendants). R. Doc. 4-1, p. 1.

Shelton was placed in the custody of Orleans Parish Sheriff's Office ("OPSO") on October 13, 2013. *Id.* at 3. He alleges that on that day, he was examined by the OPP medical staff and informed Pittman of his HIV positive status, who recorded the diagnosis and information relating thereto. *Id.* Shelton alleges that Pittman told him that he would be able to see a doctor within a couple of days. *Id.* Shelton alleges that a few days later, he had blood drawn but received no further care or medication. *Id.*

On October 17, 2013, Shelton filed his first grievance through OPP's grievance protocol, by filing an ARP form for failure to provide him with medication for his HIV. *Id.* Subsequently, Shelton filed his second grievance on October 27, 2013 for failure to respond to his first grievance. *Id.* On November 7, 2013, Shelton filed a third grievance related to his prior grievances. *Id.*

Shelton was out on bond from about November 15, 2013, to February 4, 2014. *Id.* at 4. Shelton testified that on February 4, 2014, he turned himself into the custody of OPSO. *Id.* Shelton alleges that he brought his HIV medication with him when he turned himself in. *Id.* According to Shelton, while being processed, Price asked Shelton what the medication was. *Id.* Shelton alleges that initially he declined to tell him based on "confidentiality," but when Price threatened to throw the medication away, Shelton told him the medication was to treat his HIV. *Id.* Apparently, Price allegedly scoffed at Shelton and subsequently threw the medication away. *Id.*

Shelton alleges that he subsequently saw a medical technician who he informed of the incident with Price. *Id.* He alleges that the tech told him that she could not help with that. *Id.* Shelton does not know her name. *Id.*

Shelton avers that on February 8, 2014, he filed another grievance seeking help getting the proper medication to treat his HIV. *Id.* Shelton claims to have filed subsequent grievances on February 11, 13, 15, 18, 23, and 26, 2014. *Id.* at 5. Shelton claims that he still received no response or medical attention and continued to file grievances on March 7, 24, 26, and 30, 2014. *Id.*

Shelton alleges that he finally received a response from Bordelon that stated "WE WILL NOTIFY DOC [sic] OF YOUR REQUEST." *Id.* He further alleges that he responded to Bordelon by reiterating his need for medication and by describing his deteriorating health. *Id.* Shelton alleges that he was spitting up blood, developing sores around his genitals, his legs went numb, he started to lose his eyesight, and he felt weak. *Id.* Shelton apparently filed another grievance on April 4, 2014, to which he received no response. *Id.*

Thereafter, Shelton wrote his sentencing judge, Orleans Parish Criminal District Court Judge Karen Herman, and attached a copy of all of the grievances that he filed. *Id.* Shelton was given an opportunity to explain his story to the judge in person. *Id.* Shelton alleges that the judge then "ordered the Clerk of Court to Subpoena Sheriff Gusman's Top Medical Director" to appear and explain while Shelton has been in custody without receiving the proper medication. *Id.* He further alleges that after the Sheriff received the subpoena, he was transferred to Elayn Hunt Correctional Center in St. Gabriel. *Id.* at 6. Shelton claims that OPSO transferred him in order to avoid providing his medication. *Id.* at 8.

Shelton alleges that each defendant in the instant suit was made aware of his HIV positive status through his filing of OPP's "Grievance Procedure Form ARP-1." *Id.* at 2. He alleges that Defendants violated his constitutional rights and that upon learning of his HIV status and failing to "rectify" the violations, each defendant became equally liable. *Id.* at 3.

Shelton claims that Gusman became aware of the fact that he has been in custody without receiving medical care on October 17, 2013, through the OPSO "Tiger System" and he never received a response. *Id.* at 6. He alleges that Bordelon was put on notice in November 2013 and he received no response. *Id.* at 7. Shelton alleges that Weaver was put on notice of his altercation with Price and his illness in February 2014. *Id.* Winfield, Warden of Orleans Parish Prison, was allegedly made aware of Shelton's situation in March 2014 and Shelton did not receive a response from him. *Id.* Pittman was put on notice of Shelton's condition during intake. *Id.* at 8. Shelton alleges that the unidentified Medical Practitioner who took his blood was aware of his situation and did not provide medication. *Id.*

Shelton alleges that Defendants "acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights [sic]." *Id.* at 10. He claims that they acted with deliberate indifference to Shelton's rights and that there is a direct causal link between the violation of his constitutional rights and the suffering that he has experienced. *Id.* Shelton also asserts claims for negligence and intentional infliction of emotion distress under Louisiana tort law. *Id.* at 11.

Shelton alleges that he is currently at Dixon Correctional Institute and that his "present custodians" have no regard for his medical problems. *Id.* at 9. He alleges that he is unaware of his T-Cell levels, that he is without medication, and that his body is deteriorating. *Id.* He further claims damages in the form of bodily injuries, pain and suffering, mental anguish, medical

expenses, permanent disability, future lost wages, "apprehension of insufficient medical attention to his injury," fear, humiliation, and "loss of ability to participate in normal activities." *Id.* at 11.

Shelton seeks attorney fees and costs pursuant to 42 U.S.C. § 1988 and punitive damages pursuant to 28 U.S.C. § 1983, et seq. *Id.*

   **B.**      **The *Spears* Hearing**

Shelton testified that he is currently incarcerated at Dixon under a theft charge; he was sentenced to five years imprisonment. Shelton alleged that on October 13, 2013, he was arrested and that during intake, he informed the OPP staff of his HIV positive status and his need for medication. He further alleged that he went to the medical department that same day and was seen by Pittman. According to Shelton, he advised Pittman of his situation and that he needed medication. Pittman said that he would get it and he was placed back in a holding cell. One to two days later, Shelton was placed on an open tier.

Shelton alleged that he "waited it out" to see if he would get his medication. When he did not receive any medication, Shelton filed a sick call. He claims that when nobody came to see him, he initiated the grievance process. He testified that he was able to see an unidentified medical practitioner who documented his HIV positive status and confirmed the diagnosis with University Hospital. Shelton alleges that he never received any medication following this appointment.

Shelton testified that he was at OPP for about thirty-five to forty days prior to sentencing and about three months after sentencing. He claims that he is suing Gusman because he "put him on notice" of his illness and Gusman never gave him any medication. Shelton testified that he did not speak specifically with Gusman but instead filled out Grievance Form ARP-1 which is standard protocol at OPP. According to Shelton, this is the only way to get help or a meeting

with the Sheriff but nobody answered him until Bordelon did. Shelton claims that all Bordelon told him is that he would be transferred to the custody of the Department of Corrections. He admitted that he had no direct contact with Gusman, and that Gusman was not personally involved with the provision of his medicine. Shelton claims that he believes that someone, such as Gusman's "designee," might have intercepted his grievance and answered it for Gusman. He testified that his grievance was directed to Gusman personally. Shelton has all of his grievances in his possession and claims that he attached copies to his complaint.

Shelton claims that when he did not get a response from Gusman, he went to both Weaver and Bordelon. However, Shelton admits that his complaint was addressed specifically to Weaver. He testified that he was complaining in regards to an incident involving Price when Shelton turned himself in to OPSO custody in February. According to Shelton, Price asked what the medication was that Shelton had in his possession. He claims that he told Price to ask the medical department, and Price subsequently threw the medication away. Shelton alleges that he told an unidentified medical practitioner about the incident who apparently discussed it with Price and then told Shelton that he could not do anything about it. He claims that Weaver responded to him and that he is suing Weaver (and everyone else) because he told them all that he is sick and needs medication and never got it.

When asked why he is suing the medical director, Shelton testified that he eventually wrote his sentencing judge, Orleans Parish Criminal District Court Judge Karen Herman, who ordered Gusman to have the "top medical physician" at OPP to come before the court to explain why Shelton is not getting his medication. According to Shelton, before this could happen, he was transferred. Shelton does not have any documentation relating to these events.

Shelton testified that with his condition, he is seen by a doctor once to twice a month when he is not imprisoned. He testified that he did not see a doctor during his time at OPP and that now, at Dixon, he gets medication and sees a doctor about once a month.

Shelton is seeking monetary relief. In terms of injuries, he claims that he suffered from vomiting, defecating on himself, the inability to walk and "low levels" relating to his HIV. Since leaving OPP, Shelton rates himself as a five on a scale from one to ten and claims that his health is gradually getting better.

## II.   Standard of Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28.  Therefore, the Court must determine whether the plaintiff's claims are based on an

indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.   Analysis

### A.   Failure to Exhaust All Available Administrative Remedies

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a) (West 2013). Under the PLRA, complete exhaustion is required, "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001). Therefore, even if the inmate seeks only monetary relief, which is not a remedy offered under the relevant administrative procedures, exhaustion is still required. *Id.* at n. 6. Furthermore, "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." *Gonzales v. Seal*, 702 F. 3d 785, 788 (5th Cir. 2012). Thus, complete exhaustion is mandatory and is no longer subject to any exceptions. *Id.*

"It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). As such, an inmate must comply with the applicable prison grievance procedures in order to completely exhaust under the PLRA. *Id.*; *see Wright v. Hollingsworth*, 260 F. 3d 357, 358 (5th Cir. 2001).

Additionally, failure to exhaust all available administrative remedies is an affirmative defense that should be pleaded by the defendant. *Jones*, 549 U.S. at 216. Inmates are not required to plead complete exhaustion in their complaint, *id.*, but *sua sponte* dismissal by the Court is

appropriate when it is apparent from the face of the complaint that the inmate has failed to completely exhaust all relevant administrative grievance procedures. *Kelly v. Singh*, No. 14-64-JJB-RLB, 2014 WL 4660854 at *2 (W.D. La. Sept. 17, 2014).

In the instant lawsuit, the Defendants have pleaded failure to exhaust as an affirmative defense in their Answer. R. Doc. 14, p. 4.[3] OPP's grievance procedure are nowhere in the record as Shelton's grievances were not attached to his complaint nor did the Defendants introduce the procedure as evidence. However, in *Cantwell v. Sterling*, a similar § 1983 case, the United States Fifth Circuit Court of Appeals took judicial notice of the applicable grievance procedure that was posted on the Texas Department of Criminal Justice's website when the procedure was not in the record. No. 14-51095, 2015 WL 3634424 at *1 (5th Cir. June 11, 2015).

Although OPP's grievance procedure is not in the record, we may take judicial notice of a line of cases that shed light on OPP's longstanding grievance procedure. OPP has a three-step grievance procedure which must be completed in order to exhaust all available administrative remedies. *See Stanbury v. Gusman*, No. 11-1010, 2011 WL 2457670 at *3 (E.D. La. May 27, 2011); *Mueller v. Gusman*, No. 09-6869, 2010 WL 420550 at *2 (E.D. La. Jan. 27, 2010); *Cummings v. Gusman*, No. 09-144, 2009 WL 1649737 at *2 (E.D. La. June 9, 2009); *Howard v. Hunter*, No. 04-2684, 2006 WL 2038167 at *4 (E.D. La. July 19, 2006).

Here, Shelton alleges that he filed multiple ARP-1 grievances that he directed to Gusman.[4] R. Doc. 4-1, pp. 3-5. In his complaint, Shelton never alleges that he moved on to step two of the process, only that he continued to file more grievances when he did not receive a response. *Id.* Furthermore, Shelton received a response from Bordelon stating that the

---

[3] "Petitioner has failed to exhaust all available grievance procedures as required by 42 U.S.C. § 1997e(a), and his Complaint should be dismissed in its entirety." R. Doc. 14, p. 4.

[4] During the *Spears* Hearing, Shelton clarified that each grievance he filed was personally directed to Gusman, which is not in compliance with OPP grievance procedure.

Department of Corrections will be informed of Shelton's request. *Id.* at 5. Shelton does not allege that he proceeded to step two of the process when he was dissatisfied with this response, but instead he responded to Bordelon directly. *Id.* "After the first step response is received by the inmate, the inmate may, if dissatisfied with the response, file a Step Two Form seeking to have his complaint reviewed by the Warden." *Howard*, 2006 WL 2038167 at *4. Therefore, Shelton clearly did not follow the proper protocol by responding directly to Bordelon and failing to proceed to step two of OPP's grievance procedure.

Additionally, during the *Spears* Hearing, Shelton admitted that he directed his grievances to Gusman personally. According to OPP's grievance procedure, an inmate is only supposed to send their grievance directly to Gusman upon receiving a dissatisfactory second step response. *Id.* This constitutes step three of the process. *Id.* In essence, by directing his grievances to Gusman personally, Shelton attempted to skip the first two steps of an established procedure of which compliance is required before being allowed to bring a § 1983 claim in federal court.

Lastly, Shelton avers that when he did not receive a response to his response to Bordelon, he wrote a letter to his sentencing judge informing her of the situation. R. Doc. 4-1, p. 5. As set forth above, OPP's grievance procedure is a three-step process. None of these steps involve an inmate's sentencing judge becoming involved in the grievance process.

In *Wright v. Hollingsworth*, the inmate alleged, as does Shelton (R. Doc. 4-1, p. 9), that he put the prison on notice of his dissatisfaction by filing a step one grievance. 260 F. 3d 357, 358 (5th Cir. 2001). In that case, similar to OPP, the prison required additional steps upon dissatisfaction with the results from step one. *Id.* Because the inmate failed to "pursue the grievance remedy to conclusion" prior to filing his lawsuit in federal court, the court dismissed his case without prejudice pending exhaustion of the prison's administrative procedure. *Id.* at

359. It is clear from the record and the relevant jurisprudence that Shelton failed to follow OPP's grievance protocol, thereby exhausting all available administrative remedies prior to filing his lawsuit in federal court. As such, his lawsuit must be dismissed without prejudice pending exhaustion of OPP's grievance procedure.

B.      Shelton's State Law Claims

In the alternative, Shelton seeks relief under La. C.C. arts. 2315 and 2317, which provide for personal liability for acts causing harm to another. R. Doc. 4-1, p. 11. LSA-C.C. Art. 2315 (West 2001). LSA-C.C. Art. 2317 (West 1996). Under the relevant jurisprudence, the general rule is that courts should decline to exercise jurisdiction over pendent state law claims when all federal claims have been disposed of prior to trial. *Robinson v. Gusman*, No. 06-3760, 2007 WL 1029425 at *5 (E. D. La. Mar. 29, 2007) (Engelhardt, J); *Batiste v. Island Records, Inc.*, 179 F. 3d 217, 227 (5th Cir. 1999); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988).

The court is recommending the dismissal of Shelton's § 1983 claims for failure to exhaust all available administrative remedies prior to filing his lawsuit. Therefore, his alternative state law claims should be dismissed without prejudice in order to be brought in the proper forum, as this court declines to exercise its supplemental jurisdiction when no federal claims remain.

IV.   **Recommendation**

It is therefore **RECOMMENDED** that Shelton's § 1983 complaint be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust the available administrative remedies which renders his claim frivolous pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Shelton's claims brought pursuant to Louisiana Civil Code articles 2315 and 2317 be **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise its supplemental jurisdiction.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this day of 24th of July, 2015

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**